In the Matter of JAMES R. CUSACK, an Attorney, Respondent.

First Department, December 31, 1930.

*Einar Chrystie*, for the petitioner.

*James R. Cusack*, respondent in person.

DOWLING, P. J. Respondent was admitted to practice as an attorney and counselor at law in the State of New York at a term of the Supreme Court of the State of New York, Appellate Division, Second Department, on December 15, 1919.

The petition herein charges that respondent is guilty of misconduct, as follows: "In April, 1929, Mrs. Anne G. Hendrickson, who had been injured in an automobile collision, and her husband, Frederick L. Hendrickson, retained the respondent to collect damages suffered by reason thereof. At the time of the retainer it was agreed that the respondent was to receive one-third of any sum collected as his fee for services rendered. Thereafter negotiations were conducted by the respondent which resulted in an agreement to settle the claims of his clients for the sum of $300, which sum was paid to the respondent on July 17, 1929. The respondent converted the entire amount collected to his own use and he has failed to pay any part thereof to his clients although they have made many demands therefor."

Respondent appeared and answered and the matter was referred to one of the official referees. The learned official referee has duly reported, and petitioner moves for such action as the court may deem just and proper.

The record shows: Frederick L. Hendrickson and his wife, Anne G. Hendrickson, and respondent and his wife (the latter being a cousin of Mrs. Hendrickson) had been on very friendly terms for some years prior to the spring of 1929. In April, 1929, Mrs. Hendrickson was injured in an automobile accident, when a privately owned automobile collided with a taxicab. Respondent was retained by the Hendricksons to prosecute their claims for damages. Mrs. Hendrickson testified it was agreed that respondent was entitled to one-third of the amount collected. Negotiations with the insurer of the taxicab resulted in the settlement of the Hendrickson claims against the taxicab company for the sum of $300, with the reservation of all rights against the owner of the private automobile. The Hendricksons executed the general release on July 15, 1929. Respondent received the check of the Jefferson Auto Mutual Casualty Insurance Corporation, dated July 17, 1929, for $300, payable to the order of " Fred L. Hendrickson and Anne E. Hendrickson his wife and/or James R. Cusack Atty," and on July 20, 1929, with this check for $300, respondent opened in the Manufacturers Trust Company, 1819 Broadway, an account known as " James R. Cusack, Special." It is not disputed that respondent notified the Hendricksons as soon as he received the check. Sometime in August Mr. Hendrickson called respondent on the telephone. His testimony as to that telephone conversation is

as follows: " I asked him [respondent] did he get the money. He said ' Yes,' so I said ' Well, why don't you come up to see us?' He said, ' I will,' so I got sick of it and I never bothered with it afterwards until we brought the case to the Bar Association, I got very hot and bothered about it." Mrs. Hendrickson testified that she wrote respondent under date of September 7, 1929, as follows:

" Mr. CUSACK,
  " 1841 Bway, N. Y. C.
 " DEAR SIR: I feel that I have been very patient in waiting 2 months for check on a/c. of law suit from Jefferson Cab Co.
 " I cannot understand your attitude in this matter and I wish you would advise me by the 10th of Sept., if I will have my check by that time.

" Yours truly."

Nothing was heard from respondent. Thereafter Mrs. Hendrickson consulted William F. Wundt, an attorney with offices at 150 Nassau street, who under date of September 12, 1929, wrote respondent the following letter:

" Mr. JAMES CUSACK,
  " c/o Cabco Company,
   " 1841 Broadway,
    " New York, N. Y.
 " DEAR SIR: Mrs. Anna Hendrickson advises me that you have been handling her claim for damages in connection with an accident which occurred on April 10th last at 77th Street and Central Park West. She also advises me that a settlement was made by you with the Jefferson Auto Mutual Casualty Insurance Corporation which represented one of the defendants, in the amount of $300 of which $200 was to be remitted to her and that this settlement was made on or about July 16th last. She states that her share of the proceeds of this settlement has never been remitted to her although the same has been promised from time to time. Mrs. Hendrickson has requested me to take this matter up with you and I therefore request that you please make prompt remittance of the above amount to me for her benefit.
 " She also advises me that there is another action pending in connection with the same matter against Dr. H. H. M. Lyle whose car also participated in this accident. She desires that I be substituted as her attorney in this action. Please advise me whether you will consent to substitution.
 " Trusting you will give the above matters your prompt attention and awaiting your reply, I remain

" Very truly yours."

Wundt testified that in response to this letter respondent called him on the telephone, was very apologetic about the matter, said he would come down and see him and straighten it out. An appointment was made for the following Monday, but respondent failed to keep it. Under date of September 25, 1929, Wundt again wrote respondent as follows:

" DEAR SIR: I expected you in to see me on Monday and have been waiting since then to hear from you. Kindly give the matter your attention and oblige
" Very truly yours."

There was no reply to this letter. September thirtieth Wundt wrote to respondent as follows:

" DEAR SIR: Re: Hendrickson claim.

" I waited all last week to hear from you. I do not think you should neglect this matter. I particularly desired to avoid making a motion but unless I hear from you not later than Wednesday, I shall have to proceed.
" Very truly yours."

Receiving no response to this letter, Wundt prepared papers in a proceeding to compel payment of the money, but efforts of a process server to reach respondent were unsuccessful.

Complaint was made to the Association of the Bar of the City of New York. On November 27, 1929, before the grievance committee, respondent was asked if he was in a position to pay the money then, and he stated he was. He was further asked, " Are you going to pay it," and he replied " Certainly." The money was not paid. In the latter part of January, 1930, Einar Chrystie, representing the grievance committee of the Bar Association, wrote respondent as follows:

" DEAR SIR: The Committee on Grievances will take up the matter brought to its attention by Frederick L. Hendrickson, at a meeting thereof to be held at the above address on Thursday next, January 30th, 1930, at 4:45 P. M. Please be present at that time."

There was no response to this letter. Under date of February 4, 1930, the following letter, signed by S. C. Lewis, the assistant attorney for the grievance committee, was addressed to respondent:

" DEAR SIR: The matter brought to our attention by Mrs. Hendrickson will be brought on before the Committee at the above address on Thursday, February 6, 1930, at 4:30 P. M. Please attend at that time."

Respondent did not attend at the time and place fixed, nor was anything heard from him. In April, 1930, the petition herein

was served on respondent. Almost immediately the Hendricksons received their money. As to the payment, respondent testified: " Sometime during April, towards the end of April, my wife told me that she had written to and received a letter from Mrs. Hendrickson. She — it was just the first week in May that she told me that she was going up to the City and that she thought she would pay her the money. I said to her, ' Go ahead and give it to her, I don't want to have anything to do with it.' That is, I understand, the way the money was paid."

The transcript of the bank account, which respondent opened with the $300 settlement check he received from the insurance company, shows that between July 20, 1929, the date it was opened, and September 12, 1929, the date of Wundt's letter to him, respondent had withdrawn $208.13, leaving a balance of $91.87 in the account on September 12, 1929. On September 17, 1929, a deposit of $130 was made, but a withdrawal of $25 was also made on the same date. At no time from August 29, 1929, to December 19, 1929, when the account was closed, was there enough to meet the amount due the Hendricksons. Respondent admitted that he was not in any position to pay the money due the Hendricksons from that identical fund at the time he heard from Mr. Wundt. It is not shown that he had other funds available which he might use to discharge his obligation to his clients.

An explanation of respondent's failure to reply to various letters, as above indicated, may be found in the following extract from his testimony: " With reference to these letters that I say I have not received, this address at 1841 Broadway is the address of a taxicab insurance company, the Cabco Owners Association, I believe the proper name of it is. It is the bonding company representing taxicab owners. It is a very busy office there at 1841 Broadway. They had over two and a half floors and there was a lax system there. There is nothing strange at all for me in having been in there and understanding that I didn't receive these letters.

" As far as Mr. Wundt has stated that he attempted, or rather his process server attempted to serve me and could never get me at my office, as far as that is concerned my only connection with this concern is to try cases as a trial attorney and I am very seldom in the office. At times, especially last year, I would not be in the office, oh, for the course of a week, for the course of a whole week, possibly I would be out of town, I might be delayed in a court late and I wouldn't even go near the office."

It is possible that respondent never received the letters which he claims he did not receive. He did, however, reply to Mr. Wundt's

first letter, as well as to the first notice to appear before the grievance committee of the Association of the Bar. His failure to discharge his obligation to his clients following those notices is inexplicable. He may have been piqued at his friends consulting counsel following his failure to promptly account to them. But, as the learned official referee said in his report, " * . * * it is difficult to appreciate his indignation at receiving a courteous request for payment. If he had held the money intact and produced it on demand (if in fact he did not receive the letters from Mrs. Hendrickson making such demand), there might have been some excuse for the respondent's feeling that demand should have been made on him first, before taking the matter up with another attorney. But no demand should have been necessary, therefore this would have been no justification for withholding the money for nine months, failing to keep his promise made to the committee of the Association of the Bar, and only paying under pressure of this proceeding."

The official referee concluded that the evidence sustained the charge.

In February, 1929, this court found it necessary to adopt certain rules, known as the Special Rules Regulating the Conduct of Attorneys and Counselors-at-Law in the First Judicial Department, in connection with claims or actions for damages for personal injuries or for death or loss of services resulting from personal injuries. The following are applicable to the situation now before us:

" Rule 4-B. Deposit of Collections; Notice. Whenever an attorney shall collect any sum of money upon any such claim or action either by way of settlement or after a trial, he shall forthwith deposit the same in a bank or trust company in a special account, separate from his own personal account, and shall not commingle the same with his own funds. Within ten days after the receipt of any such sum, he shall cause to be personally delivered to such client, or sent by registered mail addressed to him at his last known address, a statement in writing setting forth the amount received, the date when and the name of the person from whom he received the same, and the amount which he claims to be due for his services and disbursements, specifying the same separately. At the same time the attorney shall pay or remit to the client, if an adult, the amount shown by such statement to be due the client, and he may then withdraw for himself the amount so claimed to be due him for compensation and disbursements * * *."

" Rule 4-G. Penalty. An attorney who violates any of the foregoing rules shall be deemed to be guilty of professional mis-

conduct within the meaning of subdivision 2 of section 88 of the Judiciary Law." ■

In addition to sustaining the charge contained in the petition, the record establishes that respondent violated rule 4-B, as above set forth.

The respondent should be suspended from practice for the period of two years, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions incorporated in the order.

MERRELL, FINCH, McAVOY and SHERMAN, JJ., concur.

Respondent suspended for two years.